UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DANIELLE CREPEAU, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-377 JVB |
| | ) | |
| ROBERT MANNING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

On May 30, 2006, Plaintiff, Danielle Crepeau ("Crepeau"), filed her complaint in Starke County Circuit Court, alleging several federal Constitutional claims and numerous state law claims. On June 19, 2006, Defendants, Starke County Sheriff's Department, Stark County Indiana, Sharon Lembke, and Susan Hemphill ("Starke Defendants"), removed this case to this Court based on federal question jurisdiction.

On January 14, 2008, Crepeau filed a motion for partial summary judgment. On January 15, 2008, the Starke Defendants filed a cross motion for summary judgment. On January 29, 2008, the Starke Defendants filed a motion to strike. On June 17, 2008, these motions were referred to the undersigned to a prepare a report and recommendation. On July 1, 2008, Defendants, Susie Woods, Robert G. Manning, the Town of North Judson ("Manning Defendants"), also filed a motion for summary judgment. On December 10, 2008, the Manning Defendants' motion was referred to the undersigned to prepare a report and recommendation.

The following Report and Recommendation is based upon the record of this case that includes the pleadings, the motions, the briefs of the parties, and the arguments of counsel. This Court may enter a report and recommendation in this matter based on its referral order, 28 U.S.C. § 636(b)(1)(B), and 42 U.S.C. § 405(g).

## I. PRELIMINARY MATTERS

### A. Motion to Strike

On January 29, 2008, the Starke Defendants filed a Fed. R. Civ. P. 56 motion to strike Crepeau's use of a police report to support Crepeau's motion for partial summary, arguing that the police report is filled with inadmissible hearsay. However, even considering such evidence, this Court concludes that Crepeau has failed to submit sufficient event to establish a viable claim under the federal constitution and 28 U.S.C. § 1983. As such, this Court **RECOMMENDS** that the Starke Defendants' motion be **DENIED AS MOOT**. [Doc. No. 51].

## II. ANALYSIS

### A. Facts

On May 21, 1992, Plaintiff, Danielle Crepeau ("Crepeau"), was granted sole custody of Plaintiff, Zachery Heath ("Heath"), the son Crepeau had with Defendant, Robert Manning ("Manning"). See Paternity Order, Doc. 42- 4 at 1-2. Per agreement between Crepeau and Manning, Heath spent the summer of 2003 with Manning. See Manning Dep., Doc. No. 42-4 at 5. Thereafter, with Crepeau's consent, Heath registered for school in North Judson for the 2003-04 school year. Id.

However, in June of 2004, Crepeau informed Manning, over the phone, that she wanted to re-obtain physical custody of Heath and expressed her intention to come to Manning's house to pick up Heath. See Doc. 42-4 at 8-9. During the conversation, Manning told Crepeau that she shouldn't "be surprised if you got arrested when you get here." Id. Manning is a police officer for the town of North Judson. See Crepeau Dep., Doc. No. 42-4 at 30.

Thereafter, Crepeau contacted the Defendant, Starke County Sheriffs Department ("Sheriff"), to request assistance in enforcing the custody order and re-obtaining her son. See

Heath (Crepeau) Dep., Doc. No. 42-4 at 54-55. During the call, Crepeau spoke with Defendant, Susan Hemphill ("Hemphill"), a dispatcher for the Sheriff's Department. Id. For reasons that are disputed, Crepeau's request for assistance was turned down. Id. Crepeau alleges, however, that Hemphill stated, "I know who you are Danielle. There is no way that we're going to help you with Zachery." Id.

Later that month, on June 23, 2004, Crepeau traveled with her husband, Timothy Crepeau, and State Trooper Michael Gayer ("Gayer") to Manning's home. See Police Report, Doc. No. 42-4 at 57-58. Upon arrival, Defendant, Susan Woods ("Woods"), exited Manning's home and angrily confronted Crepeau's husband and Gayer. Id. Woods is Chief of Police for the Town of North Judson. Id. Crepeau contends that, shortly thereafter, Defendant, Sharon Lemke ("Lemke"), similarly confronted Crepeau. See Police Report, Doc. No. 42-4 at 57-58. Lemke is also a dispatcher for the Sheriff and is Manning's mother-in-law. See Heath Dep., Doc. No. 53-2 at 12. State Trooper Gayer informed Woods that Crepeau had a valid custody order; and, in a few minutes, Heath left the house to join Crepeau. See Police Report, Doc. No. 42-4 at 57-58.

Crepeau maintains that she has suffered mental distress from the process of obtaining her son. See Doc. No. 42-4 at 36. As such, Crepeau alleges that each of the Defendants, along with their public employers, have committed several Constitutional violations and numerous state law violations against her and her son.

B. Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

    C.    Summary Judgment Motions

        1.    Crepeau's Federal Constitutional Law Claims

To state a claim under § 1983, a Plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by a person acting under color of state law. Chavez v. Guerrero, 465 F.Supp.2d 864, 868 (N.D.Ill. 2006).  The "under color of state law" requirement is met if the Defendant acted in an official capacity as a public employee or exercised responsibilities pursuant to state law. Id. at 868-69.  However, State employment by itself is not conclusive of whether a Defendant acts under color of state law; rather, the conduct that forms the basis of the complaint must be related to the Defendant's state-conferred authority.  Id. at 869.  See also Gibson v. City of Chicago, 910 F.2d 1510, 1517 (7th Cir.1990).  Whether a

Defendant acted under color of state law is a question of law for the court. Chavez, 465 F.Supp.2d at 869.

The mere fact that a Defendant is a police officer does not mean that he or she acted under color of state law. Gibson, 910 F.2d at 1516. Instead, the Seventh Circuit has held, "acts committed by police officers even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." Id. Further, acts of police officers "in the ambit of their personal, private pursuits" are outside the scope of § 1983. Chavez, 465 F.Supp.2d at 869; Gibson, 910 F.2d at 1517. As such, the essential inquiry is whether the Defendants' actions, as alleged, were related in some way to the performance of their police duties. Id.

a. Manning Defendants

Robert Manning

Crepeau argues that Manning's alleged threat, regarding Crepeau's potential arrest, was sufficient to deprive her of her fundamental Constitutional right to raise her child. Regardless of whether the statements worked a deprivation of Crepeau's liberty interest, this Court finds that Crepeau failed to adequately articulate how Manning's threat was made pursuant to an official police duty. Manning asserts that the conversation at issue took place in the context of a private custody dispute between Crepeau and Manning, acting as private individuals and parents. Crepeau has failed to provide any evidence or argument to rebut Manning's characterization. As such, this Court concludes, at the onset, that Crepeau has already failed to establish that Manning's statement is properly characterized as "state action." See Chavez, 465 F.Supp.2d at 869 (holding that acts of police officers "in the ambit of their personal, private pursuits" are outside the scope of § 1983); see also Gibson, 910 F.2d at 1517.

Instead, Crepeau responds that, because Manning is a police officer by profession, she felt that Manning's alleged threat could have potentially been carried out. This Court notes, however, that Crepeau does not provide any authority to support her assertion that her subjective beliefs, regarding the scope of Manning's public profession, are sufficient, by themselves, to establish state action. See instead Gibson, 910 F.2d at 1516 (holding that, the mere fact that a Defendant is a police officer does not mean that he or she acted under color of state law). Accordingly, this Court concludes that Manning's statements were not made pursuant to state action. As such, any alleged Constitutional violations stemming from Manning's statements cannot go forward.

Susie Woods

Similarly, Crepeau alleges that Woods is liable for depriving her of the same liberty interest that Crepeau alleged against Manning. In particular, Crepeau claims that Woods' alleged actions, in regards to Crepeau's attempts to recover her son, worked a deprivation of her right to raise her son. Further, Crepeau alleges that, because Woods serves as Chief of Police for the Town of North Judson, her actions are properly characterized as state action. As with Crepeau' arguments against Manning, however, Crepeau has failed to provide sufficient evidence to establish that Woods' actions were made pursuant to official police duty and are, therefore, properly characterized as state action.

The only evidence that Crepeau submits is a single, unsupported statement in Manning's deposition, in which Manning opined that Woods was at his house "in case there was any trouble." See Manning's Deposition, Doc. No. 74-3 at 9. However, Crepeau's own deposition testimony reveals that, at the time of the incident in question, Woods was not wearing a police uniform and Crepeau did not otherwise know Woods' identity. See Crepeau's Deposition, Doc.

No. 74-3 at 34-35. Indeed, Crepeau stated that she only learned Woods' identity after the incident, from her son. Id. Similarly, Crepeau admits that she did not recognize anyone at the house besides Manning and that none of the unknown individuals were wearing police uniforms. Id. at 34-35. Despite her own testimony suggesting a more ambiguous purpose for Wood's presence at the house, Crepeau provides no additional evidence to bolster her contention that Crepeau was clearly acting pursuant to official police duty. See Chavez, 465 F.Supp.2d at 869. (holding that State employment by itself is not conclusive of whether a Defendant acts under color of state law; rather, the conduct that forms the basis of the complaint must be related to the Defendant's State-conferred authority).

Further, Crepeau submits no evidence to establish that, at any time during the incident, Woods ever revealed her public profession or indicated that her presence or actions were made pursuant to official police action. "Deciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." Pickrel v. City of Springfield, 45 F.3d 1115, 1118 (7th Cir.1995). Indeed, based on Crepeau's own testimony, it is unclear what conversations, if any, actually transpired at Manning's house. For instance, Crepeau states in her deposition that, throughout the events at Manning's house, Crepeau only spoke with her husband, Timothy Crepeau, and the state trooper that accompanied her. See Crepeau's Deposition, Doc. No. 74-3 at 35. Instead, Crepeau's testimony suggests that any conversations involving Woods took place between Woods and her husband. See Crepeau's Deposition, Doc. No. 74-3 at 34. As such, Crepeau's own assumptions regarding the purpose for Woods' presence are suspect because any conversation that Crepeau had with Woods was indirect.

Altogether, Crepeau offers nothing to indicate how the nature or purpose of Woods' actions constituted official police business. Manning's ambiguous statement, uncorroborated with any other evidence to suggest that Woods was acting pursuant to her authority as Chief of Police at the time in question, is simply insufficient to establish that Woods' actions were made pursuant to official police business. As such, this Court finds that Crepeau has failed in her burden to establish that Crepeau's actions are properly characterized as state action. Chavez, 465 F.Supp.2d at 869 (holding that it is a question of law for the court to determine whether a Defendant acted under color of state law). Consequently, Crepeau can not carry her Constitutional claims against Woods any further.

Town of North Judson

Crepeau's Constitutional claims against the Town of North Judson ("Town") are entirely based upon actions taken by Woods as an official policy maker of the Town. See Doc. No.74 at 10. Because this Court has determined that Woods' actions were not state action, this Court concludes that all of Crepeau's Constitutional claims against the Town are similarly non-sustainable.

      b.     Stark County Defendants

Susan Hemphill

Crepeau contends that the refusal of assistance, regarding enforcement of her custody order, allegedly made by Susan Hemphill ("Hemphill"), a Dispatcher for Starke County Sheriff's Department, violated Crepeau's Constitutional rights to raise her children. In support, Crepeau presents her own testimony of the conversation she had with Hemphill. See Heath (Crepeau) Deposition, Doc. No. 56-3 at 54-55. In particular, Crepeau alleges that Hemphill told her "I know who you are, Danielle," and "[t]here is no way that we're going to help you with Zachary."

Id. Crepeau alleges that these statements are the basis for a valid Constitutional, Equal Protection claim against Hemphill.

The Seventh Circuit has recognized that "a class of one equal protection claim may be brought where: (1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a total illegitimate animus toward the plaintiff by the defendant. Lunini v. Grayeb, 395 F.3d 761, 768 (7th Cir. 2005)(internal quotations omitted).

This Court notes that Crepeau has failed to present any evidence to meet the first prong of this analysis, that a person similarly situated to her was treated differently; and, as such, Crepeau's equal protection claim against Hemphill must fail. See Lunini, 395 F.3d at 770 (holding that a class of one claim will not stand where the plaintiff fails to identify someone who is similarly situated but intentionally treated differently than her). In response, Crepeau claims, somewhat puzzlingly and citing Celotex, that Crepeau, as the non-movant, does not have the burden to produce sufficient evidence to establish her claim. See Doc. No. 56 at 5. However, Crepeau mistates the rule, as it is precisely Crepeau's burden to produce sufficient evidence to establish a viable issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), stating,

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

In addition, though not specifically alleged in Crepeau's complaint or motion for summary judgment, Crepeau has similarly failed to satisfy her burden to establish a viable

substantive due process claim stemming from Hemphill's alleged statements. Although Crepeau notes that she, as a parent, has a fundamental liberty interest to raise her child, she cites to no authority to establish a substantive right to the enforcement of her custody order. Having failed to develop the argument, this Court deems any potential due process claim against Hemphill to be waived. See Kochert v. Adagen Med. Intern., Inc., 491 F.3d 674, 679 (7th Cir. 2007). Consequently, Crepeau has failed to establish a viable Constitutional claim against Hemphill.

Sharon Lemke

Crepeau alleges a Constitutional violation against Sharon Lemke ("Lemke"), also a Dispatcher for the Starke County Sheriff's Department, claiming that Lemke's alleged angry remarks at the home of Manning worked to deprive Crepeau of her fundamental right to raise her child. To begin, this Court notes that there is dispute over what role, if any, Lemke' played in the incident at Manning's house. See Gayer Affidavit, Doc. No. 53-3 at 3; Heath Dep., Doc. No. 53-2 at 12, 17-18. Regardless, however, Crepeau has failed to provide any evidence to show that Lemke acted in furtherance of her official duties, such that Lemke's actions are properly characterized as state action. See Chavez, 465 F.Supp.2d at 869 (holding that State employment by itself is not conclusive of whether a Defendant acts under color of State law; rather, the conduct that forms the basis of the complaint must be related to the Defendant's State-conferred authority).

To begin, Lemke is Manning's mother-in-law, whom Zachary's Heath's refers to as "grandma." See Heath Dep., Doc. No. 53-2 at 12. Further, the Starke Defendants submitted evidence which shows that, at the time of the incident at Manning's house, Lemke was not in uniform. See Crepeau Dep., Doc. No. 53-2 at 27. As such, it is not unreasonable to assume, as the Starke Defendants suggest, that Lemke was acting in her private role as grandma, rather than

as a dispatcher for the Starke County police department. See Chavez, 465 F.Supp.2d at 869 (holding that acts of police officers "in the ambit of their personal, private pursuits" are outside the scope of § 1983).

Crepeau did not produce any evidence to rebut the explanation set forth by the Starke Defendants. Instead, Crepeau maintains that her apprehension, in regards to Lemke's official authority, was sufficient to create state action. However, as stated above, Crepeau offers no authority to support her contention that her subjective reactions to Lemke's profession are sufficient to create state action. Instead, the law is clear that, in order to advance her Constitutional claim, Crepeau must submit evidence to suggest that Lemke's actions, if any, were made pursuant to official police business. See Chavez, 465 F.Supp.2d at 869; Gibson, 910 F.2d at 1517. As such, Crepeau's Constitutional claims against Lemke must also fail.

Starke County Sheriff's Department

Because Crepeau's Constitutional claims against the Starke County Sheriff's Department ("Sheriff") depend upon the liability of Hemphill and Lemke, Crepeau's Constitutional claims against the Sheriff must also fail.

Starke County, Indiana

Likewise, although it remains disputed whether Starke County can be held liable for any of Crepeau's claims, due to alleged separation of the offices under Indiana statute, Crepeau's Constitutional claims against Starke County also must fail for the same reason.

2. Crepeau's Supplemental State Law Claims

In addition to Crepeau's federal Constitutional claims under 28 U.S.C § 1983, Crepeau alleges multiple, independent state law claims. These include claims of fraud, negligence, abuse of process, intentional infliction of emotional distress, violation of statutory duty not to interfere

with a custody order, intimidation, and false imprisonment. The parties have fully briefed these issues in their motions for summary judgment. However, before this Court considers these claims, in regards to the parties' motions, this Court considers whether it should exercise pendent jurisdiction over the remaining state law claims.

The Supreme Court of the United States has indicated that a federal court has discretion to exercise supplemental, pendent jurisdiction and that such discretion is based on considerations of judicial economy. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("pendent jurisdiction is a doctrine of discretion, not a plaintiff's right"). In particular, Gibbs holds that a federal court should decline supplemental jurisdiction over state law claims if the federal cause of action is dismissed prior to trial. Gibbs, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law."). See also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 682 (7th Cir. 1986) ("[W]hen the federal claims are disposed of before trial, the state claims should be dismissed without prejudice as a matter of course.").

In Carnegie Melon, the Supreme Court clarified that its Gibbs holding was not intended to impose a mandatory rule but rather a discretionary one which leaned in favor of declining pendent jurisdiction in certain sitatutions. See Carnegie-Melon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Instead, the Court provided factors for lower federal courts to consider when exercising their discretion, stating, "in the unusual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Id.

Crepeau alleges at least seven, independent state law claims in her complaint and motion for summary judgment. Indeed, these claims make up the bulk of the parties' cross motions for summary judgment. Further resolution of each claim would require this Court to invest considerable time and resources to interpret the relevant Indiana statutes and case law in order to determine whether either party have failed to submit substantial evidence to warrant a grant of summary judgment. While this Court recognizes that the parties have already invested considerable time in litigating this case thus far, this Court does not wish to impede Crepeau's right to an arguably "surer-footed" adjudicator of Crepeau's state law claims. See Gibbs, 383 U.S. at 726. Similarly, whatever prejudice the Defendants may claim as a result of this Court's decision to decline supplemental, pendant jurisdiction should have been understood as a risk associated with the Defendants' decision to remove this case to the federal forum. As such, and because Defendants' removal was based solely on federal question jurisdiction, see Notice of Removal, Doc. No. 2 at 2, this Court recommends that Crepeau's remaining state law claims be remanded for further resolution in the State court, in Starke County, Indiana, from which the claims were removed .

## III. CONCLUSION

Having found that Crepeau has failed to establish a viable, Federal Constitutional claim, this Court recommends that Crepeau's motion for summary judgment be **DENIED IN PART**, in regards to all Federal Constitutional claims. [Doc. No. 42]. Accordingly, this Court recommends that the Starke Defendants' mot ion for summary judgment be **GRANTED IN PART**, in regards to all Federal Constitutional law claims. [Doc. No. 45]. Similarly, this Court recommends that the Manning Defendants' motion for summary judgment be **GRANTED IN**

**PART,** in regards to all Federal Constitutional law claims. [Doc. No. 71]. Further, this Court recommends that Defendants' motion to strike be **DENIED AS MOOT**. [Doc. No. 51].

Finally, having shed the federal Constitutional claims, this Court recommends that, pursuant to Gibbs and its progeny, supplemental jurisdiction over the remaining state law claims be declined. As a result, this Court further recommends that this case be **REMANDED** to the State court in which it was filed for the further resolution of all remaining State law claims.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED**.

Dated this 6th Day of January, 2009.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge